AO 106 (Rev. 04/10) Application for a Search Warrant

**FILED**
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

APR 1 4 2016

MATTHEW J. DYKMAN
CLERK

# UNITED STATES DISTRICT COURT
### for the
District of New Mexico

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) | Case No.  16mr 280 |
| SILVER LG  SMART PHONE, MODEL NUMBER LGMS 330, | ) ) | |
| SERIAL NUMBER LGMS33029339d7c | ) | |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____ District of <u>New Mexico</u> _____, there is now concealed
*(identify the person or describe the property to be seized)*:
See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 841 (a)(1) | Distribution of a Controlled Substance |

The application is based on these facts:
See attached Affidavit

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is
    requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Geronimo Abrahao, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 4/14/2016

City and state: Albuquerque, NM

_____
*Judge's signature*

Laura Fashing  U.S. Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT NEW MEXICO

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF ONE SILVER LG  SMART PHONE, MODEL NUMBER LGMS 330, SERIAL NUMBER LGMS33029339d7c; CURRENTLY LOCATED AT THE DEA ALBUQUERQUE DISTRICT OFFICE. | Case No. _____ |

## AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, Geronimo Abrahao, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—an electronic device—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2.      I am an investigative law enforcement officer of the United States within the meaning of section 2510 (7) of Title 18, United States Code, as a Special Agent of the DEA.  As such, your Affiant is empowered to conduct investigations of and to make arrests for offenses enumerated in Title 21, United States Code, Sections 841 and 881.

3.      I have been employed by the DEA since May of 2015, and I am assigned to the DEA's Albuquerque District Office.  My experience as a Special Agent includes, but is not limited to, conducting surveillance, interviewing witnesses, participating in arrests,

searches, and seizures, and working with undercover agents and informants.  I have

received training and experience in the investigation of federal drug and money

laundering laws.  I have participated in the investigation of several drug trafficking

conspiracies.  As a result, I am familiar with matters including, but not limited to, the

means and methods used by persons and drug trafficking organizations (DTO) to

purchase, transport, store, and distribute illegal drugs and to hide profits generated from

those transactions

4.  This affidavit is intended to show only that there is sufficient probable cause for the

requested warrant and does not set forth all of my knowledge about this matter.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

5.  The property to be searched includes one LG smart phone model number LGMS330,

Serial Number LGMS33029339d7c "hereinafter referred as Device". The Device is

currently located at the DEA Albuquerque District Office within temporary evidence

storage.

The applied-for warrant would authorize the forensic examination of the Device for the purpose

of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

6.  On February 15, 2016, Detective Davis of the Farmington, New Mexico Police

Department spoke with an individual he knew as David Kingsbeck regarding the

purchase of methamphetamine.

7.   On February 16, 2016, Detective Davis again spoke with Kingsbeck and ordered two ounces of methamphetamine from him, which were to be purchased for $1,000.00 per ounce.  Later on the same day, Detective Davis and Kingsbeck agreed to meet at the Smith's grocery store at 600 East 20th Street in Farmington, New Mexico.  At approximately 2:53 p.m., Kingsbeck contacted Detective Davis, advising him that he was sending another individual to meet with him.  A vehicle arrived in the Smith's parking lot, and parked next to Detective Davis.  Detective Davis recognized the driver as Kingsbeck and observed a male he recognized as Rupesh Bhakta exit the front passenger's side of the vehicle Kingsbeck was driving.  Bhakta then entered Detective Davis' vehicle via the front passenger side.  Once inside the vehicle, Detective Davis observed Bhakta remove a clear plastic bag from his left cargo pocket and place it in the center console.  Detective Davis weighed the substance, and provided Bhakta with U.S. currency in exchange.  Arrest teams then arrived on scene, and took both Kingsbeck and Bhakta into custody.  Following his arrest, Bhakta was read his Miranda warning by Task Force Officer Ortez.  Bhakta waived his rights, and agreed to speak.  Bhakta stated he and Kingsbeck agreed for Bhakta to deliver the methamphetamine provided to Detective Davis on Kingsbeck's behalf, and Bhakta would, in return, be paid $150.00 by Kingsbeck.  Bhakta stated Kingsbeck was concerned about Detective Davis being affiliated with law enforcement and did not want to deliver the methamphetamine himself.  Additionally, Bhakta stated Kingsbeck drove him to the meeting location, and stayed in the vehicle while the transaction took place. Task Force Office Babadi read Kingsbeck his Miranda warning, and Kingsbeck agreed to speak.  He stated he purchased two ounces of

3

methamphetamine from his supplier for $1,300 prior to the deal with Detective Davis.

Further, he admitted utilizing Bhakta for the methamphetamine transaction.

8.  The substance Detective Davis purchased from Bhakta, as directed by Kingsbeck,

field tested positive for methamphetamine.  The substance, including the small plastic

sandwich bag in which it was packaged weighed approximately 57 gross grams.

9.  On February 25, 2015, SA Jeff McKinley collected evidence seized from Kingsbeck

by Farmington Police, including a silver LG smart phone, model number LGMS330,

Serial Number LGMS33029339d7c, which Detective Davis indicated was seized

from the vehicle Kingsbeck was operating just prior to his arrest. Detective Davis also

stated the cellphone number, 505-278-4094, was the one Kingsbeck used to arrange

the narcotics transaction.  SA McKinley attempted to call the phone, but was

unsuccessful, as it appeared the service provider had de-activated the phone.

10.  Based on my training and experience, and conversations with Agents, and Officers, I

know the following regarding those involved in, trafficking of controlled substances,

including methamphetamine, and use of a telephone to facilitate drug crimes:

(a)  Criminals often use telephones, cellular telephones, pagers, and other

communication devices, i.e. "BlackBerrys" and other similar devices, to facilitate their

sales, track and monitor drug shipments, communicate with subordinates and other

4

associates, arrange monetary transfers, and avoid police detection.  Drug dealing is an

ongoing practice, so these communications may take place at any time.

(b)  Drug dealers also use answering machines, voice mail, and text messaging to

receive, transmit, and store messages to and from customers, suppliers, subordinates, and

other associates, involved in the distribution of controlled substances.

(c)  Drug dealers often use cameras to capture a moment in the history of their drug

transactions.  For example, they may photograph themselves or others next to large

amounts of drugs and or money, to show others the quantity of drugs which they can

deliver.  These photographs may also show their business associates with large amounts

of drugs and money.  These photographs are often stored in the electronic memory, SIM

cards, or other storage devices of the cellular telephones.

11. The Device is currently in storage at the DEA Albuquerque District Office.  In my

training and experience, I know the Device has been stored in a manner in which their

contents are, to the extent material to this investigation, in substantially the same state

as they were when the Device first came into the possession of the DEA.

## **TECHNICAL TERMS**

12. Based on my training and experience, I use the following technical terms to convey

the following meanings:

a.  Wireless telephone:  A wireless telephone (or mobile telephone, or cellular

telephone) is a handheld wireless device used for voice and data communication

5

through radio signals.  These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.  A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.  In addition to enabling voice communications, wireless telephones offer a broad range of capabilities.  These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet.  Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b.  Digital camera:  A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film.  Digital cameras use a variety of fixed and removable storage media to store their recorded images.  Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader.  Removable storage media include various types of flash memory cards or miniature hard drives.  Most digital cameras also include a screen for viewing the stored images.  This storage media can contain any digital data, including data unrelated to photographs or videos.

6

c.  Portable media player:  A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files.  However, a portable media player can also store other digital data.  Some portable media players can use removable storage media.  Removable storage media include various types of flash memory cards or miniature hard drives.  This removable storage media can also store any digital data.  Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d.  GPS:  A GPS navigation device uses the Global Positioning System to display its current location.  It often contains records the locations where it has been.  Some GPS navigation devices can give a user driving or walking directions to another location.  These devices can contain records of the addresses or locations involved in such navigation.  The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth.  Each satellite contains an extremely accurate clock.  Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers.  These signals are sent by radio, using specifications that are publicly available.  A GPS antenna on Earth can receive those signals.  When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

7

e.   PDA:  A personal digital assistant, or PDA, is a handheld electronic device used

for storing data (such as names, addresses, appointments or notes) and utilizing

computer programs.  Some PDAs also function as wireless communication

devices and are used to access the Internet and send and receive e-mail.  PDAs

usually include a memory card or other removable storage media for storing data

and a keyboard and/or touch screen for entering data.  Removable storage media

include various types of flash memory cards or miniature hard drives.  This

removable storage media can store any digital data.  Most PDAs run computer

software, giving them many of the same capabilities as personal computers.  For

example, PDA users can work with word-processing documents, spreadsheets,

and presentations.  PDAs may also include global positioning system ("GPS")

technology for determining the location of the device.

f.   Tablet:  A tablet is a mobile computer, typically larger than a phone yet smaller

than a notebook that is primarily operated by touching the screen.  Tablets

function as wireless communication devices and can be used to access the Internet

through cellular networks, 802.11 "wi-fi" networks, or otherwise.  Tablets

typically contain programs called apps, which, like programs on a personal

computer, perform different functions and save data associated with those

functions.  Apps can, for example, permit accessing the Web, sending and

receiving e-mail, and participating in Internet social networks.

g.   IP Address: An Internet Protocol address (or simply "IP address") is a unique

numeric address used by computers on the Internet.  An IP address is a series of

8

four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

h.  Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

13. Based on my training, experience, and research, I know that this Device has capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, Tablet, and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

### ELECTRONIC STORAGE AND FORENSIC ANALYSIS

14. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed

via the Internet are typically stored for some period of time on the device.  This

information can sometimes be recovered with forensics tools.

15. *Forensic evidence.*  As further described in Attachment B, this application seeks

permission to locate not only electronically stored information that might serve as

direct evidence of the crimes described on the warrant, but also forensic evidence that

establishes how the Device was used, the purpose of its use, who used it, and when.

There is probable cause to believe that this forensic electronic evidence might be on

the Device because:

a.   Data on the storage medium can provide evidence of a file that was once on the

storage medium but has since been deleted or edited, or of a deleted portion of a

file (such as a paragraph that has been deleted from a word processing file).

Forensic evidence on a device can also indicate who has used or controlled the

device.  This "user attribution" evidence is analogous to the search for "indicia of

occupancy" while executing a search warrant at a residence.

b.   A person with appropriate familiarity with how an electronic device works may,

after examining this forensic evidence in its proper context, be able to draw

conclusions about how electronic devices were used, the purpose of their use, who

used them, and when.

c.   The process of identifying the exact electronically stored information on a storage

medium that are necessary to draw an accurate conclusion is a dynamic process.

Electronic evidence is not always data that can be merely reviewed by a review

10

team and passed along to investigators.  Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves.  Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

    d.  Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

16. *Nature of examination.*  Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant.  The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the devices to human inspection in order to determine whether it is evidence described by the warrant.

17. *Manner of execution.*  Because this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto premises.  Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## **CONCLUSION**

**18.** I submit that this affidavit supports probable cause for a search warrant authorizing

the examination of the Device described in Attachment A to seek the items described

in Attachment B.

Respectfully submitted,

Geronimo Abrahao
Special Agent
Drug Enforcement Administration

Subscribed and sworn to before me
on April 14, 2016:

UNITED STATES MAGISTRATE JUDGE

12

## ATTACHMENT A

1.      The property to be searched includes a silver LG smart phone, model number LGMS330, Serial Number LGMS33029339d7c. The Device is currently in temporary storage at the Albuquerque DEA District Office.

This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.

# ATTACHMENT B

1.      All records on the Device described in Attachment A that relate to violations of Title 21, United States Code, Sections 841, 843, and 846 and involve David KINGSBECK, or any other individual aiding, abetting, or, including:

    a.  lists of customers and related identifying information (including names, addresses, phone numbers, emails, social networks, or any other identifying information);

    b.  types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

    c.  any information related to sources of drugs (including names, addresses, phone numbers, emails, social networks, or any other identifying information);

    d.  text messages and related data including dates, phone numbers and other information that might provide context related to this investigation or identities of parties;

    e.  photographs that might provide context to this investigation and/or the identities of other parties involved in ~~the robberies~~ drug trafficking. *[handwritten initials]*

2.      Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.